# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRYAN D. JONES** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00920** |
| | ) | **Judge Aleta A. Trauger** |
| **GLAD MUSIC PUBLISHING &** | ) | |
| **RECORDING LP d/b/a GLAD MUSIC** | ) | |
| **CO. and/or GLAD MUSIC** | ) | |
| **PUBLISHING,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss (Doc. No. 74) filed by defendant Dwayne D. Maddox, III, as Administrator Ad Litem of the Estate of Donald Evans Gilbreth ("Maddox"), for lack of subject matter jurisdiction and, alternatively, improper venue.

For the reasons set forth herein, the court will grant the motion and dismiss the claims against Maddox for lack of subject matter jurisdiction. Although defendants David Snoddy and World-Wide Records, Inc. ("World-Wide") did not join in the motion, the court also finds that it lacks subject matter jurisdiction over the claims against these defendants (collectively with Maddox, the "Maddox defendants") and will dismiss the claims against these defendants *sua sponte*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Bryan D. Jones and Jeffery G. Jones ("Bryan and Jeffery" or "the plaintiffs") bring suit against numerous defendants, including the Maddox defendants, asserting several claims, many of which do not concern the Maddox defendants. The court will attempt to

summarize here only the facts relevant to Maddox's Motion to Dismiss. The facts set forth below are drawn from the Complaint (Doc. No. 1).

The plaintiffs are both citizens and residents of Texas. Several entity defendants are alleged to have their principal place of business in Texas. At least two defendants other than Maddox are alleged to be citizens of Tennessee. Dwayne Maddox is an attorney licensed in the State of Tennessee and was appointed by the Probate Court for Benton County, Tennessee as the administrator *ad litem* of the Estate of Donald Evans Gilbreth ("Gilbreth Estate"). Snoddy is a citizen and resident of Alabama, and World-Wide is an Alabama corporation with its principal place of business in Muscle Shoals, Alabama. (Doc. No. 1 ¶¶ 1–10.) The plaintiffs assert that this court has federal question jurisdiction over the Complaint because the case arises under the laws of the United States, 28 U.S.C. § 1331, and, more specifically, because the case "arises under the Copyright Act," for purposes of 28 U.S.C. § 1338(a). (Doc. No. 1 ¶ 11.) The Complaint asserts that venue in this district is proper under 28 U.S.C. §§ 1391 and 1400.

Bryan and Jeffery are the adult sons of the late country music recording artist and songwriter George Jones and the late Shirley Ann (Jones) Arnold ("Shirley Ann"), to whom George Jones was married from 1954 until their divorce in 1968. In April 1968, in contemplation of their divorce, Shirley Ann and George Jones entered into a written agreement that provided, in pertinent part, that, in settlement of the parties' community property rights, Shirley Ann would receive "[o]ne-half of the song writer's rights to all songs written by the said George Glenn Jones, which are presently published or controlled by Broadcast Music International ['BMI']," and George Jones would receive the other half. (Doc. No. 1 ¶ 16.) On June 11, 1968, Shirley Ann and George executed a Supplemental Property Settlement Agreement ("Supplemental Agreement") that similarly divided evenly between them the songwriter's rights to all songs written during the

marriage by George Jones and controlled by BMI. (*Id.* ¶ 17.) In addition, the Supplemental Agreement specified that George Jones would receive as his "separate property" "all recording rights and record sale rights in the songs he ha[d] sung with Musicor, Starday, Mercury and any other recording company that he might have performed for." (*Id.*)

Many of the allegations in the Complaint concerning the other defendants pertain to the songwriter rights that were granted to Shirley Ann in the divorce and inherited by Bryan and Jeffery upon her death in 1991.[1] As relevant to Maddox's Motion to Dismiss, the plaintiffs allege that, in May 2020, they learned of the existence of eight reel-to-reel master tapes of recorded songs created by George Jones in 1966 in Sumner County, Tennessee ("1966 Masters"), during the marriage of Shirley Ann and George Jones and currently held in a safe deposit box at First Bank in either Benton or Carroll County, Tennessee. (*Id.* ¶ 37.) The plaintiffs believe that the 1966 Masters capture recordings that embody musical compositions that are part of the "pre-divorce catalogue," "one-half of which was voluntarily transferred by George Jones to Shirley [Ann] by written agreement . . . and transferred by testamentary disposition to Bryan and Jeffery." (*Id.* ¶ 38.) The plaintiffs also allege that the 1966 Masters and the recordings they capture were not disclosed as assets of the marital estate during the divorce proceedings and were not awarded to George Jones as his separate property in his divorce from Shirley Ann. (*Id.* ¶ 39.) As a result, Shirley Ann retained a one-half community property interest in the 1966 Masters (and the GJ Sings Masters, discussed below), which Bryan and Jeffery inherited from Shirley Ann upon her death in 1991. (*See id.* ¶¶ 66, 68(j).)

According to the Complaint, defendant David Snoddy filed a declaratory judgment action in the Circuit Court for Benton County, Tennessee ("State Court action") in November 2013

---

[1] George Jones died in 2013. (*Id.* ¶ 27.)

against defendants World-Wide Records, Inc. ("World-Wide") and Maddox, as the representative of the Gilbreth Estate, seeking a resolution of the ownership of certain other master recordings entitled *George Jones Sings Hank Williams* (the "GJ Sings Masters") and, apparently, the 1966 Masters as well. (Hereinafter, the two sets of masters are referred to, collectively, as the "Masters," except where such usage is ambiguous.) The GJ Sings Masters supposedly "contain eight of the [1966] Masters and two additional master tracks recorded during [George] Jones's marriage to [Shirley Ann]." (*Id.* ¶ 40.)

By way of background, the Complaint further explains that Gilbreth and Snoddy were indicted on federal drug trafficking charges in 1984, in the United States District Court for the Eastern District of Louisiana ("Louisiana Court"), at which time Gilbreth pledged the "Masters" (apparently meaning both the 1966 Masters and the GJ Sings Masters) as security for appearance bonds for himself and Snoddy. At a hearing concerning the bonds, the value of the Masters was determined to be approximately $1.5 million. (*Id.* ¶ 42.) In July 1984, Snoddy and Gilbreth were convicted and sentenced to lengthy prison terms.[2] When they reported to prison, their appearance bonds were canceled. According to the Complaint, the Louisiana Court originally ordered that the Masters should be returned to Gilbreth, but a supplemental order directed that they be returned to Gilbreth's attorney in the criminal proceeding. Despite a receipt for the return of the Masters signed by Gilbreth's attorney, the Masters purportedly remained in the possession of the Clerk of Court for the Eastern District of Louisiana until May 30, 2018. Gilbreth, in the interim, had died intestate in July 2005.[3]

---

[2] Gilbreth was released from prison in 1992 and Snoddy in 2015. (Doc. No. 1 ¶ 42.)

[3] Shortly after filing the Complaint, the plaintiffs also sought a temporary restraining order and a preliminary injunction to restrain the Maddox defendants from selling or disposing of the Masters prior to resolution of the ownership issue. The court entered a temporary restraining order on November 16, 2020 and then conducted a hearing on the request to convert it to a preliminary

In April 2018, the United States District Court for the Eastern District of Louisiana ("Louisiana Court") ordered the Masters transferred to Maddox. Maddox retrieved the tapes and transported them to Tennessee. (*Id.* ¶ 45.) He filed an inventory with the Probate Court for Benton County, Tennessee in the Gilbreth Estate probate proceedings in July 2018, identifying the Masters as an asset of the Estate and stating that they were in a safe deposit box at First Bank. Bryan and Jeffery believe that the Masters remain in the safe deposit box at First Bank in either Benton or Carroll County, Tennessee. (*Id.* ¶ 46.)

Also in July 2018, an order was entered in the State Court action finding that Snoddy and Gilbreth were equal owners of "the George Jones recordings" previously held by the Louisiana Court and currently in the possession of the Gilbreth Estate. (*Id.* ¶ 47.) That finding was apparently based on evidence presented by Snoddy as to how the 1966 Masters had come into Gilbreth's possession in 1982 and then into World-Wide's possession in 1983, when Snoddy and Gilbreth formed World-Wide, and then became jointly owned by Snoddy and Gilbreth. (*Id.* ¶¶ 48–56.) According to documentation submitted by Snoddy to the Louisiana Court, the GJ Sings Masters are a "compilation containing ten masters that had not been distributed or sold commercially." (*Id.* ¶ 57.)

World-Wide registered a copyright with the U.S. Copyright Office in May 1983 for a sound recording with ten tracks entitled *George Jones sings Hank Williams and other great country hits.*

---

injunction on February 21, 2021. At the hearing, the parties presented evidence and argument concerning the master tapes pledged as security in the Louisiana Court and their disposition and current location. The parties settled the dispute, thus rendering moot the plaintiff's preliminary injunction motion, and neither side ordered a copy of the transcript of the hearing. Evidence presented to the court, however, strongly indicated that many of the allegations in the Complaint concerning the 1966 Masters and the GJ Sings Masters are simply mistaken. For purposes of Maddox's Motion to Dismiss, however, the defendants bring a facial, rather than a factual, challenge to subject matter jurisdiction, so the court continues to presume that these allegations in the Complaint are true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017).

(*Id.* ¶ 58.) The plaintiffs claim that these ten tracks were first recorded during George Jones's marriage to Shirley Ann and "include[] eight of the [1966] Masters." (*Id.* ¶ 59.) No documents were filed with the U.S. Copyright Office identifying Snoddy or Gilbreth as "copyright claimants to any musical compositions authored by George Jones or to any sound recordings performed by George Jones, whether in whole or in part." (*Id.* ¶ 60.)

The Complaint asserts two "Causes of Action," or claims for relief, that pertain to the Maddox defendants. The first is a claim for declaratory relief under 28 U.S.C. § 2201, seeking judicial declarations to the effect that

> (1) the State Court judgment "granting equal ownership of the Masters to Snoddy and the Estate of Donald Evans Gilbreth is of no force and effect in that said Tennessee Circuit Court has no jurisdiction to determine copyright ownership which falls within the exclusive jurisdiction of federal courts pursuant to 17 U.S.C. §§ 1331, 1338(a)"; and

> (2) "Bryan and Jeffery are entitled to (a) equally share in fifty percent (50%) of the proceeds from an arm's length sale, lease, and/or license of the Masters and the GJ Sings Masters, (b) to equally share in fifty percent (50%) of all revenue streams arising from the commercial exploitation of the Masters and the GJ Sings Masters and each of the tracks embodied therein, including all derivative works, (c) the right to receive full accountings and payments for their pro-rata share of royalties and fees derived from the commercial exploitation of their copyright interests and 'songwriter rights' in the musical compositions from the 'pre-divorce catalogue' embodied in the Masters and the GJ Sings Masters; and (d) all other rights and economic benefits available to them as a result of Arnold's one-half community property interest in the Masters and the GJ Sings Masters, and all derivatives created therefrom including after termination of the marriage which such interests Bryan and Jeffery inherited from their mother, Arnold."

(*Id.* ¶ 68(i), (j); *see also id.* ¶ 70.)

The second "Cause of Action" against the Maddox defendants is for conversion. (Doc. No. 1, at 27.) The Complaint claims that these defendants are liable for conversion, insofar as they willfully and intentionally "gained control over and purportedly obtained copyright ownership in" the 1966 Masters and GJ Sings Masters, one-half of the economic value of, and benefits from which, were inherited by Bryan and Jeffery upon the death of their mother, that Snoddy and

Maddox converted Bryan and Jeffery's interests in the various Masters "for their respective uses and benefit . . . with an intent to deprive . . . Bryan and Jeffery of the economic benefits associated with the [1966] Masters and GJ Sings Masters to which they are lawfully entitled"; and that by thus converting them, Snoddy and Maddox have "diminished the value and economic benefits of the [1966] Masters and the GJ Sings Masters to Bryan and Jeffery." (*Id.* ¶ 87.)

The Complaint was filed on October 26, 2020, and the docket reflects that Maddox returned a Waiver of Service on November 6, 2020. (Doc. No. 17.) In this Waiver, Maddox acknowledged that his answer or Rule 12 motion would be due within sixty days from October 30, 2020, or December 29, 2020. Without filing a motion to extend that deadline, Maddox, through counsel, filed his Motion to Dismiss (Doc. No. 74) on January 20, 2021. The motion explained that the delay in its filing was due to Maddox's having only recently, at that point, retained counsel. (*Id.* at 1 n.1.) The plaintiffs filed a Response in opposition to the Motion to Dismiss (Doc. No. 96), and Maddox filed a Reply (Doc. No. 103).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The issue is non-waivable and may even be raised by the court *sua sponte*. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*,

847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (citation omitted). "If the allegations in the Complaint establish federal claims, the exercise of subject matter jurisdiction is proper." *Id.* A factual attack is a challenge to the factual existence of subject matter jurisdiction. In the case of a factual challenge, no presumption of truthfulness applies to the factual allegations. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). In either case, the plaintiff has the burden of establishing jurisdiction in order to survive a motion to dismiss. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

The court construes the challenge brought in this case as a facial attack, premised largely upon the allegations in the Complaint and documents filed as exhibits thereto.

## III.    DISCUSSION

### A.    Subject Matter Jurisdiction Under the Copyright Act

Under 28 U.S.C. § 1331, federal district courts have original jurisdiction over civil actions "arising under" the Constitution, laws, or treaties of the United States. *Id.* Similarly, § 1338 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a). The Supreme Court has interpreted the phrase "arising under" in these sections "identically," applying the Court's "§ 1331 and § 1338(a) precedents interchangeably." *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1333 n.2 (Fed. Cir. 2013). The only difference is that, for cases falling within the copyright-specific "arising under" jurisdiction of § 1338(a), Congress not only provided for federal

jurisdiction, but also eliminated state jurisdiction. *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.").

For purposes of the subject matter jurisdiction analysis in this case, because the plaintiffs do not allege that any other federal question governs their claims, federal question subject matter jurisdiction exists if the plaintiff's claims against the Maddox defendants arise under the Copyright Act.[4] However, deciding whether the claims at issue arise under the Copyright Act is not a simple matter. *See, e.g.*, 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A] (2021) ("In cases involving works protected by statutory copyright, the division between jurisdiction in the federal courts, on the one hand, and jurisdiction in the courts of the various states, on the other, poses among the knottiest procedural problems in copyright jurisprudence."); *see also Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011) ("[I]t is settled beyond peradventure that an action does not 'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright. The question of whether the suit 'arises under' the copyright law is considerably more sophisticated." (internal quotation marks and citations omitted)); *Perry v. Broad. Music, Inc.*, 23 F. App'x 210, 211 (6th Cir. 2001) ("[I]t is well-established that not every complaint that refers to the Copyright Act 'arises under' that law for purposes of § 1338(a).").

The Declaratory Judgment Act, itself, does not confer federal question jurisdiction. As the Sixth Circuit has explained in an action postured similarly to this case, the question of whether the court has jurisdiction over a declaratory judgment action involving a copyright dispute is answered

---

[4] The plaintiffs do not contend, even in the alternative to federal question jurisdiction, that the court may exercise supplemental jurisdiction over the claims asserted against the Maddox defendants, likely because the claims against these defendants are not "so related" to the claims against the other defendants "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

by deciding whether the defendant could have filed a lawsuit against the plaintiff that would have been determined to arise under the Copyright Act. *See Severe Records*, 658 F.3d at 581 ("Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law.'" (quoting *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008)).

So what types of coercive claims arise under the Copyright Act? Generally, courts agree that a suit "arises under" the Copyright Act if it seeks remedies "expressly granted by the Act, *e.g.*, a suit for infringement or for the statutory royalties for record reproduction," or "asserts a claim requiring construction of the Act." *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir. 2000) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964) (Friendly, J.)), *quoted in Eberhard Architects, LLC v. Bogart Architecture, Inc.*, 314 F.R.D. 567, 571 (N.D. Ohio 2016). The analysis of whether claims arise under the Copyright Act "turns on what is alleged on the face of the complaint." *Id.* (citing *T.B. Harms*, 339 F.2d at 825–28).

Thus, for example, "if the complaint alleges copyright infringement or seeks an injunction under the Copyright Act, under *T.B. Harms* the federal court has jurisdiction[.]" *Id.* Likewise, claims premised upon *authorship* of a copyrighted work arise under the Act. *Severe Records*, 658 F.3d at 580, 581 (holding that the court had jurisdiction over an action in which the plaintiffs sought a declaratory judgment to identify the authors of certain sound recordings and the underlying compositions, where the defendants had threatened to sue the plaintiffs for copyright infringement on "numerous occasions"). In addition, ownership claims grounded in disputes about authorship are considered to arise under the Act. *See, e.g.*, *Merchant v. Levy*, 92 F.3d 51, 55 (2d Cir. 1996) ("Plaintiffs' action seeking to establish their rights to copyright co-ownership *because*

*of their status as co-authors of a joint work* falls well within these jurisdictional boundaries." (emphasis added))

However, a dispute about copyright *ownership*, standing alone, does not arise under the Copyright Act. *See, e.g.*, *Perry*, 23 F. App'x at 211 (affirming the dismissal for lack of subject matter jurisdiction of a claim that "essentially involve[d] a dispute as to the ownership of the compositions at issue" and stating "the federal grant of a . . . copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law" (citing *T.B. Harms*, 339 F.2d at 826)); *accord Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 81 (1st Cir. 2007) (holding that co-ownership claims do not "arise under" the Copyright Act where the claims "may be determined by the terms of a contract governed by state law or through other ownership interests governed by state law and thus not require application of the Copyright Act"); *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 4–5 (1st Cir.1987) (rejecting federal question jurisdiction where a claim of co-ownership, "in its very nature and essence, [was] one for breach of contract" under state law); *Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983) (holding that federal courts lack jurisdiction over cases in which the ownership of a copyright is "the sole question for consideration").

### B.     Whether the Declaratory Judgment Claim Arises Under the Copyright Act

Maddox argues that the claim demanding a declaratory judgment against him, Snoddy, and World-Wide does not "arise under" the Copyright Act, as it "relate[s] to mere ownership of a copyright, rather than copyright infringement." (Doc. No. 75, at 2.) He further argues that the plaintiffs have not shown that the defendants could have brought a "coercive action" against them asserting claims arising under the Copyright Act. (*Id.* at 6 (citing *Severe Records*, 658 F.3d at 580).)

In response, the plaintiffs argue, first, that the motion should be denied as untimely. Because lack of subject matter jurisdiction may be raised at any time, even on appeal, the motion is not untimely. *Answers in Genesis*, 556 F.3d at 465. Along the same lines, the plaintiffs protest that Maddox does not have standing to move for dismissal on behalf of Snoddy and World-Wide, who are represented by other counsel. However, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*," even if the parties do not question the court's jurisdiction. *Id.* Consequently, because Maddox's arguments pertain equally to the claims against Snoddy and World-Wide, the granting of his motion for lack of subject matter jurisdiction will also compel dismissal of the claims against Snoddy and World-Wide.

More substantively, the plaintiffs' response does not point to any coercive action that the defendants could have brought against them, and the court is hard-pressed to conceive of one. Certainly, unlike in *Severe Records*, the defendants have not threatened the plaintiffs with litigation, nor does the Complaint contain allegations suggesting that the *plaintiffs* have engaged in conduct that brings them into conflict with the defendants, such that there exists a legitimate threat of litigation. More specifically, there is no suggestion in the record that the plaintiffs (or the Maddox defendants, for that matter) have engaged in copyright infringement. A copyright infringement claim requires proof of "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Ritchie v. Williams*, 395 F.3d 283, 289 n.6 (6th Cir. 2005) (quoting 4 *Nimmer on Copyright* § 13.01). The plaintiffs do not purport to have been engaged in copying, nor do they bring a direct claim against the defendants for infringement. The plaintiffs also have not brought a claim for the "statutory royalties for record reproduction," *Bassett*, 204 F.3d at 349, nor do they suggest that the defendants would have the ability to bring

such a claim against them. At most, it seems the defendants, like the plaintiffs, could have brought an action seeking a declaration that they own both the physical Masters and the copyrights in the musical recordings embodied on them, such that they have the right to any revenue stream generated by future commercial exploitation of the recordings or sale of the Masters themselves.[5]

In an effort to show that their declaratory judgment claim "arises under" the Copyright Act, for purposes of subject matter jurisdiction, the plaintiffs characterize it broadly as a claim that

> necessarily requires construction of the Act, namely with respect to authorship and ownership, duration of copyrights, determination of whether the works at issue were published or unpublished, the author's right to termination of transfers of copyright, and if any of the master recordings at issue are works for hire.

(Doc. No. 96, at 10.) The court is not persuaded. Regardless of whether the issues they reference may be tangentially relevant to their ownership claim, the fact remains that the plaintiffs cannot point to any coercive action the defendants could have brought against them, much less one that arises under the Copyright Act.

First, regarding the plaintiffs' assertion that the court must address the question of authorship to resolve this dispute, the plaintiffs insist that their claim "turns upon their father George Jones's authorship of the master records" and that George Jones's authorship "has implications in copyright law unaffected by a possible transfer of ownership by him." (Doc. No.

---

[5] One of the confusing aspects of Maddox's motion and the plaintiffs' response is that neither party expressly distinguishes among the three distinct components of "ownership" that might arise in connection with the Masters: (1) ownership of the tapes as tangible, physical objects; (2) ownership of the copyrights in the musical *recordings* captured on the tapes; and (3) ownership of the copyrights in the *compositions* embodied by the musical recordings. The first issue—ownership of tangible, physical property—does not remotely fall within the scope of the Copyright Act. The third—the ownership of the copyrights in the compositions—is not really addressed or acknowledged by the parties, and, certainly, no infringement is alleged against the Maddox defendants with respect to the compositions. The court surmises that the intended focus of the plaintiffs' claim is on the copyrights in the musical recordings captured on the tapes, but that issue is intertwined with the question of the ownership of the physical tapes.

96, at 7–8.) Authorship, however, is not actually raised as a claim in the Complaint, and it does not appear that anyone actually contests George Jones's authorship of the works at issue. Certainly, the plaintiffs do not claim to be co-authors. Although the plaintiffs' Response to the Motion to Dismiss asserts that the Maddox defendants "claim to [be] the authors and owners of the . . . master recordings at issue as works for hire" (Doc. No. 96, at 5) and have "repudiated" George Jones's status as author (*id.* at 8), the Complaint itself does not substantiate these assertions. While the defendants may claim to *own* the Masters, nowhere does the Complaint allege that the defendants claim to be "authors" of the recorded works.

The plaintiffs also assert that the court will be required to interpret the Copyright Act to determine whether the copyrights in the 1966 Masters vested in George Jones or whether they were a "work for hire," as that term is defined by the Act, in order to resolve their claim. To support this argument, they assert that Snoddy first claimed in the State Court action that he and Gilbreth owned World-Wide and that the "tapes in question" were "owned by World Wide Records" because "[George] Jones recorded the tapes at issue for both Mr. Gilbreth and Mr. Snoddy." (Doc. No. 1 ¶ 48) In addition, World-Wide's copyright registration indicated that World-Wide was the "employer for hire of Snoddy and [Gilbreth]." (Doc. No. 1 ¶ 58.) Elsewhere, however, Snoddy claimed that he and Gilbreth had multiple verbal agreements making him and Gilbreth "equal co-owner[s] in those tapes." (*Id.*) Regardless of whether Snoddy has taken various inconsistent positions with regard to the ownership of the Masters and the relationship between Snoddy, Gilbreth, and World-Wide, nowhere does the Complaint allege that any of these defendants was— or claims to have been—George Jones's "employer for hire" when he made the recordings embodied on the Masters. In fact, the Complaint entirely disregards the possibility of the Maddox defendants' ownership of the Masters. Instead, the Complaint alleges that the Masters belonged to

George Jones and were an undisclosed asset of the marital estate when he and Shirley Ann divorced. (*See* Doc. No. 1 ¶ 66 (enumerating the rights in the works accruing to Bryan and Jeffery "[a]s a result of George G. Jones's authorship and ownership of the Masters and the GJ Sings Masters from the date of creation in 1966," specifically including "the right to receive their pro-rata share of any economic benefits from the copyrighted work created by George Jones during the existence of the marital community and all derivatives of such works following the termination of the Jones/Arnold marriage, which such rights Bryan and Jeffery inherited from their mother").)

In other words, regarding the ownership of copyrights in the recordings, the plaintiffs, again, claim ownership, not authorship, and their asserted ownership derives from the division of property in their parents' divorce under state law pertaining to the distribution of undisclosed marital assets. The plaintiffs' position is that, under state law, the recordings embodied on the 1966 Masters (as well as the 1966 Masters themselves as physical objects) were a non-disclosed asset of the marital estate in which Shirley Ann was legally entitled to a one-half interest, and which her children inherited (or should have inherited) upon her death in 1991.[6]

The plaintiffs also argue that a "repudiation of ownership can create a 'case of actual controversy' under 28 U.S.C. § 2201(a) and trigger a party's ability to seek declaratory relief." (Doc. No. 96, at 5.) In support of this assertion, the plaintiffs cite *Everly v. Everly*, 958 F.3d 442, 466 (6th Cir. 2020), but the Sixth Circuit's actual holding in *Everly* was that repudiation of a party's *authorship* (by a co-author) may trigger the party's ability to seek a declaration that the party is an author. *See Everly*, 958 F.3d at 468 (reversing summary judgment based on its conclusion that "a genuine factual dispute exists as to whether Don [Everly] expressly repudiated

---

[6] Notably, the Complaint does not actually allege that any exploitation of the Masters has taken place.

Phil [Everly]'s *authorship* of Cathy's Clown" (emphasis added)). As set forth above, authorship claims are generally deemed to arise under the Copyright Act, but ownership claims do not, unless "co-ownership results from purported statutory co-authorship," in which case "the question of co-ownership is governed by the Copyright Act." *Severe Records*, , 658 F.3d at 581 (citation omitted).

It is true that, in his concurring opinion in *Everly*, Judge Murphy states, somewhat more broadly: "A repudiation of [copyright] ownership can create a 'case of actual controversy' under 28 U.S.C. § 2201(a) and trigger a party's ability to seek declaratory relief [under the Copyright Act]." *Everly*, 858 F.3d at 466 (Murphy, J., concurring). But in the cases cited in support of that proposition, the claimants claimed to be co-authors as well as co-owners of the copyrights. *See Zuill v. Shanahan*, 80 F.3d 1366, 1368–69 (9th Cir. 1996) ("Mr. Zuill and Mr. Rossi claim to be 'authors of a joint work,' so that copyright vested in them as well as Mr. Shanahan as 'co-owners.'" (citing 17 U.S.C. § 201(a)); *Merchant v. Levy*, 92 F.3d 51, 52 (2d Cir. 1996) ("This appeal concerns the appropriate time period in which those claiming to be co-authors of a work whose copyright is registered to another person may sue to establish their co-ownership rights.").

In *Merchant*, in fact, the defendants expressly challenged the court's subject matter jurisdiction, arguing that "a claim for a declaration of co-ownership rights to a copyright is not a federal cause of action." *Merchant*, 92 F.3d at 55. The court rejected the argument, holding that a case in which the plaintiffs seek "to establish their rights to copyright co-ownership *because of their status as co-authors of a joint work* falls well within these jurisdictional boundaries" discussed by Judge Friendly in *T.B. Harms*, 339 F.2d at 828. *Merchant*, 92 F.3d at 55 (emphasis added). The court continued:

> The Copyright Act provides that "[c]opyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co[-]owners of copyright in the work." 17 U.S.C. § 201(a). Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties,

resolution of which depends on state contract law, copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself.

*Id.* (footnote and internal citation omitted). *Everly*, *Zuill*, and *Merchant* are all distinguishable from the case at bar, because Bryan and Jeffery's ownership claim is not premised on a question of disputed authorship.

The plaintiffs also contend that those cases holding that contract-based ownership disputes do not arise under the Copyright Act are not controlling here, because this case "does not involve a contractual dispute" between them and the Maddox defendants. The defendants claim there is a contract at issue—one between George Jones and Gilbreth assigning ownership of the 1966 Masters, buried among the documents filed in the Louisiana Court—which, they claim, "proves this case is about ownership." (Doc. No. 103, at 4–5.) The import and validity of that contract are clearly disputed, and it is not appropriate for the court to consider it in the context of ruling on a motion to dismiss bringing a facial challenge to subject matter jurisdiction. Regardless, the plaintiffs' ownership claim derives from a different contract—the Supplemental Agreement executed by their parents in connection with the division of property in their divorce. The Supplemental Agreement's failure to expressly reference the 1966 Masters is apparently what causes the plaintiffs to classify the tapes as undisclosed assets that *should have been* distributed as part of the Supplemental Agreement. Although the plaintiffs are not litigating to enforce that contract *per se*, the inescapable conclusion is that the validity of the plaintiffs' ownership claim will depend upon the complex interplay between the terms of the Supplemental Agreement and the applicable states' laws of divorce and inheritance—state law issues well outside the purview of the Copyright Act. *See Cambridge Literary Props.*, 510 F.3d at 81 (co-ownership claims do not "arise under" the Copyright Act where the claims "may be determined by the terms of a contract

governed by state law or through *other ownership interests governed by state law*" (emphasis added)).

Regarding the term "publication," the Complaint alleges that, when Snoddy filed documents pertaining to the GJ Sings Masters in the Louisiana Court, he alleged that the ten masters "had not been distributed or sold commercially," but, when World-Wide registered the copyright in GJ Sings Hank Williams and other great country hits, it asserted in the registration that the work had been "published" on April 25, 1983. (Doc. No. 1 ¶¶ 57, 58.) The Complaint itself does not take a side on this issue or explain why it matters to the plaintiffs' ownership claim. Again, the plaintiffs do not bring a claim for copyright infringement. There are no other allegations regarding publication of the Masters in the Complaint. The plaintiffs now argue that the term "publication" "is statutorily defined in copyright law and has implications beyond ownership" (Doc. No. 96, at 8), but they do not explain its implications for their ownership claim or why the court would be called upon to construe the term "publication." They posit that "an author may terminate a transfer of his copyright interest in a sound recording" (Doc. No. 96, at 9), but they do not allege that George Jones did so in this case or explain how, if he had, that would affect their claims.

In sum, the plaintiffs' arguments in response to the Motion to Dismiss do not correlate with the actual claims in the Complaint. In the Complaint, as set forth above, the plaintiffs seek a declaration as to the *ownership* of the Masters and GJ Sings Masters—and, more specifically, a declaration that the State Court lacked jurisdiction to order that Snoddy and Gilbreth shared equal joint ownership of them and that the 1966 Masters and that the Masters instead "constitute community property of the marital estate." (Doc. No. 1 ¶ 70(A).)

The court construes the Complaint as seeking a declaratory judgment that the plaintiffs own a one-half interest in the Masters, as tangible personal property, and a one-half interest in the copyrights of the sound recordings captured on the Masters. Because the plaintiffs cannot identify a coercive action the defendants could have brought against them that would arise under the Copyright Act, their claim for declaratory judgment does not "arise under" the Copyright Act for purposes of 28 U.S.C. § 1338(a).

### C.    Whether the Conversion Claim Arises Under the Copyright Act

Count Three of the Complaint, for "conversion," inescapably pertains to ownership: it relies on allegations that Snoddy, World-Wide, and Maddox "knowingly and willfully gained control over and purportedly obtained copyright ownership in and to the Masters and GJ Sings Masters authored or co-authored by George Jones, one-half of the economic value and benefits [of which] were inherited by Bryan and Jeffery upon the death of their mother." (Doc. No. 1 ¶ 81.) It further asserts that, although World-Wide registered a sound-recording copyright for the GJ Sings Masters, it did so without a written agreement with George Jones, as a result of which the Masters and GJ Sings Masters "were not lawfully conveyed to Snoddy, Gilbreth, or World-Wide." (*Id.* ¶ 84.)

Again, the Complaint appears to conflate the concepts of ownership/possession of the Masters as physical objects and the Masters as the embodiment of sound recordings entitled to copyright protection. Insofar as the claim for conversion pertains to the Masters as tangible property, the claim clearly falls under state law, not copyright law. *See, e.g.*, *Lankford v. City of Hendersonville*, No. M2016-02041-COA-R3-CV, 2018 WL 1559971, at *9 (Tenn. Ct. App. Mar. 29, 2018) ("Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. Conversion is an intentional tort . . . ." (citation omitted)).

To the extent the plaintiffs are claiming conversion of their interest in the sound recordings captured on the Masters, the defendants assert, in a footnote, that Tennessee does not recognize a cause of action for conversion of intellectual property, as a result of which the conversion claim fails as a matter of law. (*See* Doc. No. 75, at 9–10 n.2 (citing *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 848 (M.D. Tenn. 2019)).) The plaintiffs respond that they are not asserting a claim for conversion of intellectual property—which would seem to be a concession that the claim does not arise under the Copyright Act. They characterize the claim as asserting that the defendants "took control over the masters at issue, claimed to own them when they did not, and converted Plaintiffs' one-half interest in economic value and benefits and to the Masters and GJ Sings Masters." (Doc. No. 96, at 10.) Although the Complaint itself refers to conversion of the "copyright ownership" (Doc. No. 1 ¶ 81), the Response to the Motion to Dismiss appears to confirm that the conversion claim was intended to pertain to ownership of the Masters as physical, tangible property. In either event, this claim would not arise under the Copyright Act.[7] As a result, it likewise does not fall within the scope of 28 U.S.C. § 1338(a).

---

[7] Courts have held that claims originally characterized as state law claims, such as claims for conversion, unjust enrichment, misappropriation, and so forth, that seek to "vindicate rights that are not qualitatively different" from the rights afforded to copyright owners, including the rights to copy and distribute, are preempted by the Copyright Act. *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, No. 20-24619-CIV, 2021 WL 299824, at *5 (S.D. Fla. Jan. 28, 2021); *see also OpenRisk, LLC, v. Microstrategy Servs. Corp.*, 876 F.3d 518, 524 (4th Cir. 2017) ("[W]hen a conversion claim . . . rests on an allegation of wrongful copying and distribution of intellectual property, it is 'equivalent' to a copyright infringement claim and thus preempted[.]"). When a state law claim is thus preempted, a federal court may recharacterize it as a copyright claim arising under the Copyright Act, even if it is originally asserted as a claim under state law. But preemption is the opposite of what is happening in this case. Here, the plaintiffs are asserting a claim for conversion and attempting to characterize it as arising under the copyright laws, but they have not actually alleged facts suggesting a violation of the rights protected by the Copyright Act, such as copying and distribution. Instead, they simply claim that that the defendants have wrongfully exercised dominion over the Masters.

## IV.    CONCLUSION

For the reasons set forth herein, the defendants' Motion to Dismiss for lack of subject matter jurisdiction will be granted. The court does not reach the question of venue.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge